
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **JAMES A. McGREW, JR.** | § | Case No. 13-50113 |
| xxx-xx-3222 | § | |
| | § | |
| Debtor | § | Chapter 7 |

| | | |
|---|---|---|
| BONNIE DAVIS | § | |
| | § | |
| Plaintiff | § | |
| v. | § | Adversary No. 13-5009 |
| | § | |
| JAMES A. McGREW, JR. | § | |
| | § | |
| Defendant | § | |

## MEMORANDUM OF DECISION[1]

ON THIS DATE the Court considered the Motion for Summary Judgment filed by the Plaintiff, Bonnie Davis ("Plaintiff"), acting in a pro se capacity, and a competing Request for Judgment in Defendant's Favor filed by the Defendant, James McGrew, Jr. ("Defendant" or "Debtor"),[2] and the respective responses in opposition filed to each motion. In that context, the Court has also considered the "Motion for Determination that

---

[1] This Memorandum of Decision is not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or as to other evidentiary doctrines applicable to the specific parties in this proceeding.

[2] This request, which presents the same argument as the Defendant's Motion for Determination, and for which the Plaintiff has been given a reasonable opportunity to present relevant material, shall be shall be adjudicated as a competing motion for summary judgment pursuant to FED. R. CIV. P. 12(d) since it relies upon materials extraneous to the actual pleadings. *Morin v. Caire*, 77 F.3d 116, 123 (5th Cir. 1996); *Morawski v. Farmers Texas Cnty. Mut. Ins. Co.*, 2014 WL 991573, at *2 (E.D. Tex., Mar. 11, 2014).

Debt/Claim of Bonnie Davis is Relieved, Released, and Voided by Bankruptcy Filings" (the "Defendant's Motion") filed on April 8, 2014, by the Debtor-Defendant in his underlying Chapter 7 case to which no objection has been filed, and which was assigned to the undersigned judge for consideration by the Hon. Brenda T. Rhoades due to its close identity to issues raised by the complaint in this adversary proceeding.[3]

The Plaintiff's complaint seeks a determination of whether a particular debt owed to her by the Defendant-Debtor is excepted from discharge pursuant to 11 U.S.C. §523(a)(15). Upon due consideration of the pleadings, the proper summary judgment evidence submitted by the parties, and the relevant legal authorities, the Court concludes that there is no genuine issue as to any material fact and that the Plaintiff is entitled to judgment as a matter of law that the debt owed to her by the Defendant arising from the entry of judgment by the Third Judicial District Court in and for Lincoln Parish, Louisiana on July 11, 2011 is nondischargeable under 11 U.S.C. § 523(a)(15).[4] Thus, the relief sought by the complaint shall be granted and the Defendant's corresponding request for judgment and his "Motion for Determination that Debt/Claim of Bonnie Davis is

---

[3] See *Order Regarding the Motion for Determination that Debt/Claim of Bonnie Davis is Relieved, Released and Voided by Bankruptcy Filing* filed on May 6, 2014 (dkt #21) in case no. 13-50113.

[4] This Court has authority to enter a final judgment in this adversary proceeding since it statutorily constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(I) and (J) and meets all constitutional standards for the proper exercise of full judicial power by this Court.

Relieved, Released, and Voided by Bankruptcy Filings" filed in his bankruptcy case shall each be denied.

## Factual and Procedural Background[5]

The Plaintiff, Bonnie Davis, and the Debtor-Defendant, James A. McGrew, Jr., were divorced by entry of a Judgment of Divorce on October 9, 2007 (the "Divorce Decree") issued by the Third Judicial District Court in and for Lincoln Parish, Louisiana, (the "Louisiana Family Court") under cause no. 51,009, Div. B.[6] On October 11, 2007, the parties jointly filed an "Act of Settlement of Community Property and Other Claims Between the Parties" (the "Settlement Agreement").[7] The Settlement Agreement was acknowledged to be "incidental to the divorce" and its stated purpose was "to equally divide the community of acquets and gains which existed between the parties and to settle all other claims arising out of their marriage and divorce between them including BONNIE SEEKFORD MCGREW's claim for interim and final spousal support."[8] Among the community assets transferred to the Defendant were all of the Plaintiff's interests in three limited liability companies: JM Contractors of LA, LLC, JM Truck

---

[5] The facts presented are those which stand uncontested by and among the parties and are presented only as a general factual background to the legal claims asserted in the case. This section is not intended to resolve any disputed or contested facts.

[6] *See* ¶ 1 in Defendant's original *Answer to Complaint* and ¶ 4 in Defendant's *Answer to Amended Complaint*.

[7] Ex. A to Plaintiff's First Amended Complaint.

[8] *Id.*, ¶ I at p. 1.

Accessories, LLC, and J McGrew Contractor, LLC.[9] In exchange, the Plaintiff would be held harmless against any debt arising from the three companies[10] and she would be paid the sum of $185,000.00 for her interests, which was denominated in the Agreement as an "Equalizing Payment."[11] That provision provided as follows:

> If the Equalizing Payment is not paid in full by January 27, 2009, then JAMES A. MCGREW, JR. shall begin making payments at that time toward the remaining balance owed on the Equalizing Payment as follows:
>
> 1) a minimum of $1,237.00 shall be paid every two (2) weeks; and
> 2) the greater of either:
>
>> a) increments of $60,000, $60,000, and a $65,000 final payment to be paid over a twenty-four (24) month period; or
>>
>> b) 100% of any excess cash flow of JM Contractors of LA, LLC, JM Truck Accessories, LLC, and J. McGrew Contractor, LLC, with excess cash flow to be defined as follows: gross earnings, less costs (sic) of goods sold and operating expenses, less overhead, less debt service, less taxes, less the minimum payment of $1,237 owed to BONNIE SEEKFORD MCGREW every two (2) weeks as set forth above.[12]

The Settlement Agreement also contained an unusual exoneration clause which

---

[9] *Id.*, ¶ V at p. 3.

[10] *Id.*, ¶ VI at p. 4.

[11] *Id.*, ¶ VII(C) at p. 5.

[12] *Id.*

read as follows:

> D.  In the event that JM Contractors of LA, LLC, JM Truck Accessories, LLC and J McGrew Contractor, LLC and JAMES A. MCGREW, JR. personally file bankruptcy prior to the payment of the Equalizing Payment owed to BONNIE SEEKFORD MCGREW, then JAMES A. MCGREW, JR. will be relieved of paying that sum to BONNIE SEEKFORD McGREW, her heirs and assigns. Should that happen, neither party shall have the right to attempt the recission (sic) of any other agreements set forth in this document or the return of any partial payments made by JAMES A. MCGREW, JR. towards the Equalizing Payment.[13]

The Defendant failed to pay the Equalizing Payment by January 27, 2009.[14] He began making the alternative $1,237 biweekly installment payments toward the Equalizing Payment in February 2009 pursuant to the Settlement Agreement.[15] The biweekly payments continued through the end of November 2009, at which time the Defendant notified the Plaintiff that payments would be suspended because of a "significant financial hardship."[16] Attempts by the Plaintiff to obtain financial information regarding the companies were resisted by the Defendant.

Litigation subsequently ensued in the Louisiana Family Court as the Plaintiff sought to collect the Equalizing Payment from her ex-husband. The state court litigation

---

[13] *Id.*, ¶ VII(D) at p. 5.

[14] The Defendant did, however, fulfill his contractual obligation to pay to the Plaintiff a bi-weekly gross salary of $1,600 from July 27, 2007 through January 27, 2009. Ex. B to Plaintiff's First Amended Complaint.

[15] *Id.*

[16] Ex. C to Plaintiff's First Amended Complaint.

over the Defendant's default under the Settlement Agreement resulted in the entry of a Judgment by the Louisiana Family Court on July 11, 2011 in which, after trial of the obligations arising under the Settlement Agreement, the Family Court ordered the Defendant to pay $158,790.63 to the Plaintiff, plus $3,000 in attorney's fees and court costs (the "Property Division Judgment").[17]  Since the entry of the Property Division Judgment in 2011, the Defendant-Debtor has not paid any amounts awarded to the Plaintiff pursuant to that Judgment.

After the Plaintiff attempted to garnish her ex-husband's wages in 2013 as a means to collect the sums due and owing to her under the Property Division Judgment, the Defendant-Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in this Court on July 10, 2013.  This individual filing followed the filing of a voluntary petition for relief under Chapter 7 on July 5, 2013 in this Court for each of his three companies.[18]

The Plaintiff, as a pro se litigant, subsequently initiated this adversary proceeding and has filed the present Motion for Summary Judgment, generally asserting that there are no genuine issues of material fact and that, under such uncontested facts, she is entitled to a determination that the debt arising from the Property Division Judgment is non-dischargeable as a divorce-related obligation under § 523(a)(15).  The Debtor-Defendant

---

[17] Ex. D to Plaintiff's First Amended Complaint.

[18] See Chapter 7 case filings for J McGrew Contractor, LLC (case no. 13-50109); JM Contractors of LA, LLC (case no. 13-50110); and JM Truck Accessories, LLC (case no. 13-50111), all of which have since been closed as "no-asset" cases with no distribution to creditors.

opposes the Plaintiff's Motion, and has filed a competing "Request for Judgment in Defendant's Favor" in response to the Plaintiff's Motion. The Defendant also has filed a corresponding "Motion for Determination that Debt/Claim of Bonnie Davis is Relieved, Released, and Voided by Bankruptcy Filings" in his underlying Chapter 7 case, seeking similar relief.

While the pleadings of the pro se Plaintiff in this context are not in technical compliance with the regimen set forth in Local District Court Rule CV-56,[19] the substance of her motion and the documents upon which she relies are set forth with sufficient clarity and the Court has carefully confirmed that Defendant does not contest the authenticity or admissibility of such documents, including the Settlement Agreement and the Property Division Judgment. Rather, this dispute is based upon the proper interpretation or effect to be given to those documents. Thus, the Court believes that the substance of the motion for summary judgment is properly presented, notwithstanding the lack of technical compliance with the local rules. *Texas Instrum., Inc. v. Hyundai Elec. Indus. Co., Ltd.*, 42 F.Supp.2d 660, 671–72 (E.D. Tex. 1999); *Tarrant v. Union Pac. R.R. Co.*, 2008 WL 2097375, at * 3 (E.D. Tex., Apr. 21, 2008). The Court's review of the materials contained in the summary judgment record submitted by both parties establishes that there is an absence of any genuine issue of material fact with regard to those particular facts that are integral to a determination of nondischargeability in this context.

---

[19] The provisions of Local District Court Rule CV-56 are incorporated into adversary proceedings in this Court by Local Rule of Bankruptcy Procedure 7056.

**Discussion**

*Summary Judgment Standard*

Construed as competing motions for summary judgment, the various motions presented by the parties in this adversary proceeding are adjudged pursuant to Federal Rule of Bankruptcy Procedure 7056. That rule incorporates Federal Rule of Civil Procedure 56, which provides that summary judgment shall be rendered "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986), *quoting* FED. R. CIV. P. 56(c).

Any party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion. *Id.* at 323. As a movant, a party asserting that a fact cannot be genuinely disputed must support that assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c). "An issue is *'genuine'* if it is real and substantial, as opposed to merely formal, pretended or a sham." *Bazan ex. rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) (emphasis in original). "A fact is material only if its resolution

would affect the outcome of the action. . . ." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009).

If a summary judgment motion is properly supported, a party opposing the motion may not merely rest upon the contents of its pleadings, but rather must demonstrate in specific responsive pleadings the existence of specific facts constituting a genuine issue of material fact for which a trial is necessary. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986), *citing* FED. R. CIV. P. 56(e). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. If, as in this case, the facts are not in genuine dispute and the unresolved issues pertain to the legal effect of the summary judgment evidence presented, summary judgment is particularly appropriate. *Mansker v. TMG Life Ins. Co.,* 54 F.3d 1322, 1326 (8th Cir. 1995); *Thompson Everett, Inc. v. Nat'l Cable Adver., L.P.,* 57 F.3d 1317, 1323 (4th Cir. 1995) ["A federal court may resolve the legal questions between the parties as a matter of law and enter judgment accordingly."].

A determination of whether a particular debt is dischargeable under the Bankruptcy Code is a question of federal law, although state law may inform that determination. *Grogan v. Garner,* 498 U.S. 279, 284 (1991); *Gupta v. Eastern Idaho Tumor Institute, Inc. (In re Gupta)*, 394 F.3d 347, 350 (5th Cir. 2004). In viewing the dischargeability of debts in the domestic relations sphere in particular, the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") in 2005 significantly broadened the scope of debts potentially excepted from discharge in a

bankruptcy case. *Morris v. Allen (In re Morris)*, 454 B.R. 660, 662 (Bankr. N.D. Tex. 2011) ["BAPCPA was meant to expand the universe of divorce-related debts excepted from discharge under 11 U.S.C. §523(a)(5) and 11 U.S.C. §523(a)(15)."]; *Wodark v. Wodark (In re Wodark)*, 425 B.R. 834, 838 (B.A.P. 10th Cir. 2010) ["One of Congress's overarching themes in enacting BAPCPA was to redefine and reinforce the ability of non-debtor former spouses to recover both support and property settlement obligations from debtors in bankruptcy."].

*Non-Dischargeability Under 11 U.S.C. §523(a)(15)*

Before the introduction of §523(a)(15) of the Bankruptcy Code, a debt arising from a settlement in a divorce proceeding was generally construed to be a dischargeable obligation unless it could be fairly characterized as one "in the nature of support." The addition of §523(a)(15) to the Bankruptcy Code in 1994, however, generally reversed the burden of proof imposed in this context by making all debts arising from a divorce decree or separation agreement nondischargeable unless a debtor successfully demonstrated an inability to pay the contested domestic debt or established that a discharge of that debt would benefit him more than it would harm the non-debtor obligee.[20] Thus, the pre-

---

[20] After the 1994 amendments, the language of § 523(a)(15) excepted from discharge any debt:

. . .

(15)   not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless-
      (A)   the debtor does not have the ability to pay such debt from income or

-10-

BAPCPA version of the (a)(15) exception to discharge for debts outside the scope of the §523(a)(5) category of support obligations was originally intended to protect non-debtor spouses who, for example, might have agreed to take lower child support payments in exchange for the assumption of marital debt by the obligor/debtor-spouse.

However, the passage of BAPCPA in 2005 dramatically altered the language of §523(a)(15) by deleting both of the subsections under which a debtor might seek the dischargeability of a settlement debt. This deletion eliminated any consideration of a debtor's "ability to pay" or the use of any "balancing test" and instead rendered as non-dischargeable virtually all obligations arising between spouses as a result of a divorce decree. *Picco v. Wise (In re Wise)*, 2012 WL 5399075, at *5-6 (Bankr. E.D. Tex., Nov. 5, 2012). According to the subsection as adopted in 2005, as long as the obligation is "incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record or a determination made in accordance with State or territorial law by a governmental unit," then it cannot be eliminated by a bankruptcy discharge order.[21] As analyzed by one

---

        property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B)    discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. § 523(a)(15) (West 2005).

[21] 11 U.S.C. §523(a)(15) (West Supp. 2013).

commentator,

> [t]he enactment of subsection 523(a)(15) and the increase in the scope of the discharge exception effected by the 2005 amendments, expresses Congress' recognition that the economic protection of dependent spouses and children under state law is no longer accomplished solely through the traditional mechanism of support and alimony payments. State courts do not always draw a sharp distinction between support and property division in providing for the postdivorce economic security of dependent family members. Property settlement arrangements are often important components of the protection afforded individuals who, during the marriage, depended on the debtor for their economic well-being.

4 COLLIER ON BANKRUPTCY ¶ 523.23 at p. 523-127 (16th ed. rev. 2013) (internal quotations omitted).

Therefore, in order for the property division obligation in this case to be excepted from discharge, the undisputed facts must demonstrate that: (1) the Debtor-Defendant owes a debt to a spouse, former spouse, or child and (2) that such debt was incurred in the course of a divorce or separation or in connection with a separation agreement, divorce decree, or other court record in a divorce or separation case.

The uncontested facts appear to present a clear case for the nondischargeability of this debt under §523(a)(15). It is uncontested that the debt assessed against the Defendant and in favor of the Plaintiff by the Property Division Judgment in 2011 constitutes a debt that is owed to a debtor's "spouse, former spouse, or child." Further, it is without dispute that the debt evidenced by the Property Division Judgment was assessed against, and incurred by, the Defendant "in connection with a . . . divorce decree or other order of a

court of record." The Plaintiff's action before the Louisiana Family Court in 2011 was based upon the contractual obligations arising from the Settlement Agreement reached in 2007 — a Settlement Agreement that was expressly acknowledged by the parties to be "incidental to the divorce" and that sought to divide the marital assets and compromise all existing claims of the parties arising from their marriage and divorce. The same Louisiana Family Court issued the Property Division Judgment in 2011 through which it implicitly found that the Defendant had breached his contractual obligations under the Settlement Agreement and that the Plaintiff was entitled to collect the amounts owed to her thereunder.

Notwithstanding the entry of the Property Division Judgment and all of the circumstances surrounding that judicial action, the Defendant claims that he may now invoke the contractual defense provided by ¶ VII (D) of the Settlement Agreement and that such defense now relieves him of any obligation to pay any sum of money to the Plaintiff.[22] In other words, the Defendant contends that, notwithstanding the entry of the Property Division Judgment in 2011, the filing for bankruptcy relief by him and his

---

[22] Again, that provision read as follows:

D. In the event that JM Contractors of LA, LLC, JM Truck Accessories, LLC and J McGrew Contractor, LLC and JAMES A. MCGREW, JR. personally file bankruptcy prior to the payment of the Equalizing Payment owed to BONNIE SEEKFORD MCGREW, then JAMES A. MCGREW, JR. will be relieved of paying that sum to BONNIE SEEKFORD McGREW, her heirs and assigns. Should that happen, neither party shall have the right to attempt the recission (sic) of any other agreements set forth in this document or the return of any partial payments made by JAMES A. MCGREW, JR. towards the Equalizing Payment.

*Settlement Agreement*, ¶ VII(D) at p. 5.

companies two years after the entry of such judgment relieves him of any obligation to satisfy that judgment amount. However, the contractual defense set forth in ¶ VII (D) of the Settlement Agreement between the parties did not survive the entry of the Property Division Judgment due to the principles of res judicata.

The doctrine of res judicata precludes relitigation of not only actions or defenses which were raised and decided in a prior case, but also those which could have been raised. "One concept of res judicata, referred to as claim preclusion, treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same claim or cause of action." *Stone v. La. Dept. of Revenue*, 2014 WL 580764, at *5 (E.D. La., Feb. 12, 2014) (*citing Sea-Land Servs., Inc. v. Gaudet*, 414 U.S. 573, 578-79 (1974)). "The purpose of both the federal and state laws of res judicata is to promote judicial efficiency and final resolution of disputes by preventing needless relitigation." *Breaux v. Avondale Indus., Inc.*, 02-1713 (La. App. 4 Cir. 03/12/03); 842 So.2d 1115, 1118. If the elements of res judicata are met, then in the words of the Restatement (Second) of Judgments, "in an action upon the judgment, the defendant cannot avail himself of defenses he might have interposed, or did interpose, in the first action." RESTATEMENT (SECOND) OF JUDGMENTS §18 (1982). "It is immaterial whether he interposed the defense or failed to do so or even defaulted in the original action." *Id*. at cmt. c. As described in one Fifth Circuit case,

> One motivating principle behind claim preclusion is waiver. If a party does not raise a claim or defense in the prior action, that party thereby waives its

> right to raise that claim or defense in the subsequent action. . . . The effect of a judgment extends to the litigation of all issues relevant to the same claim between the same parties, whether or not raised at trial.

*U.S. v. Shanbaum*, 10 F.3d 305, 310-11 (5th Cir. 1994)(citations and internal quotations omitted) (*citing Allen v. McCurry*, 449 U.S. 90, 94 (1980)) [holding that claim preclusion applies to claims that "were or could have been raised" in a prior action that involved "the parties or their privies" when the prior action had been resolved by "a final judgment on the merits"]. "The essence of the doctrine is that a valid final judgment is conclusive between the parties, and all causes of action arising out of the transaction or occurrence that is the subject of the suit are extinguished and merged into a judgment in favor of the plaintiff or are extinguished and merged into a judgment in favor of the defendant so as to preclude subsequent action." *Olsen v. Olsen*, 12-0737 (La. App. 5 Cir. 03/13/13); 113 So.3d 274, 277.

The Full Faith and Credit Statute, 28 U.S.C. § 1738, "requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Kremer v. Chem. Const. Corp.,* 456 U.S. 461, 466 (1982). Therefore, Louisiana law governs the preclusive effect of a judgment rendered by a Louisiana state court. *Hugel v. Se. Louisiana Flood Prot. Auth.*, 429 Fed. App'x. 364, 367 (5th Cir. 2011); *In re Barnett Marine, Inc.*, 343 B.R. 561, 566 (Bankr. E.D. La. 2006).

"In Louisiana, a valid, final judgment in favor of a plaintiff is conclusive between the same parties except on appeal or other direct review as to all causes of action existing

at the time of the final judgment arising out of the transaction or occurrence that is the subject matter of the litigation." *Breaux,* 842 So.2d at 1119.  Thus, under Louisiana law, the following requirements must be met in order for *res judicata* to apply to an asserted claim or defense: "(1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation." *Chevron U.S.A., Inc. v. State*, 993 So.2d 187, 194 (La. 2008) (*quoting Burguieres v. Pollingue*, 843 So.2d 1049, 1053 (La. 2003)).  LA. REV. STAT. §13:4231. "[T]he chief inquiry is whether the second action asserts a cause of action which arises out of the transaction or occurrence that was the subject matter of the first action." *Burguieres*, 843 So.2d at 1053.

    All of the elements for the application of res judicata under Louisiana law exist in this case to preclude the Defendant's invocation of ¶ VII (D) of the Settlement Agreement.  The Property Division Judgment is a valid judgment, rendered by a Louisiana family court with jurisdiction over both the subject matter and the parties in a manner consistent with due process.  It is a final judgment that disposes of the competing merits of the parties' claims under the Settlement Agreement and establishes a liability that is owed to the Plaintiff by the Defendant pursuant to the Judgment.  The parties in the prior action are identical to the parties in this action.  The defense under ¶ VII (D) of the Settlement Agreement sought to be utilized by the Defendant in this action was generally

available to the Defendant in the prior action and clearly arose from the Settlement Agreement between the parties that was the subject matter of the prior litigation. While it is true that the Defendant had not yet filed for bankruptcy protection at the time of the litigation leading to the entry of the Property Division Judgment, the degree to which that contingent defense under the Agreement was available to the Defendant as a prevailing defense to the contractual liability at that time was totally within the exclusive control of the Defendant. It was a defense which was available to the Defendant in that litigation, subject to the fulfillment of all of the contingencies to that defense. The fact that the Defendant elected to forego the specific action which would have legitimized that particular defense at the time of the State Court Litigation is of no consequence for the purposes of res judicata. Once the state court declared that the Equalizing Payment defined under the Settlement Agreement was still due and owing to the Plaintiff, it eliminated the future application of that contingent defense. The liability of the Defendant to the Plaintiff under the contract was established by the entry of the Property Division Judgment and any potential defense to the existence of that liability was forever precluded under the principles of res judicata. To allow the Defendant to raise a contractual defense at this point to the existence of the liability evidenced by the Property Division Judgment would be an impermissible collateral attack upon the finality of that judgment. "A collateral attack is defined as an attempt to impeach the decree in a proceeding not instituted for the express purpose of annulling it." *Pontchartrain Park Homes, Inc. v. Sewerage and Water Board of New Orleans*, 246 La. 893, 168 So.2d 595

(1964) (citing *Brigot's Heirs v. Brigot*, 47 La.Ann. 1304, 17 So. 825 (1895); *Leonard v. Reeves*, 11-1009 (La. App. 1 Cir. 1/12/12), 82 So. 3d 1250, 1260. "No principal of law has received greater and more frequent sanction, or is more deeply imbedded in our jurisprudence, than that which forbids a collateral attack on a judgment or order of a competent tribunal, not void on its face ab initio." *Nethken v. Nethken*, 307 So.2d 563, 565 (La.1975), and cases cited therein. The same result would occur under Texas law. *Adams v. Adams*, 2011 WL 6747420, at *3 (Tex. App. – Beaumont, Dec. 22, 2011, pet. denied) ["Contractual defenses constitute impermissible collateral attacks on a prior agreed judgment when they seek to abrogate the terms and obligations of the judgment instead of seeking to enforce or interpret the decree's terms."] (citing *Shoberg v. Shoberg*, 830 S.W.2d 149, 152 (Tex. App. – Houston [14th Dist.] 1992, no pet.) and *Spradley v. Hutchinson*, 787 S.W.2d 214, 220 (Tex. App. – Fort Worth 1990, writ denied)).

Because the Property Division Judgment constitutes a valid and outstanding debt owed by the Debtor-Defendant to a former spouse that was incurred in connection with a divorce decree or other order of a court of record in a divorce or separation case, that existing liability must be declared nondischargeable under 11 U.S.C. §523(a)(15).

**Conclusion**

Accordingly, upon due consideration of the pleadings, the proper summary judgment evidence submitted by the parties, and the relevant legal authorities, the Court concludes that there is no genuine issue as to any material fact and that the Plaintiff is

entitled to summary judgment that the debt owed to her arising from the entry of the Property Division Judgment should be declared nondischargeable pursuant to 11 U.S.C. §523(a)(15). The Debtor-Defendant's corresponding request for judgment and his "Motion for Determination that Debt/Claim of Bonnie Davis is Relieved, Released, and Voided by Bankruptcy Filings" filed in his bankruptcy case shall each be denied. Court costs of $293.00 incurred in this adversary proceeding shall be awarded to the Plaintiffs and assessed against the Debtor-Defendant. Appropriate orders and a judgment will be entered which are consistent with this opinion.

Signed on 06/18/2014

THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE